IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BAILEY BURCHETT, individually as Administrator of the Estate of DAMIEN "CRAIG" BURCHETT, and DALTON BURCHETT,<br><br>Plaintiffs,<br><br>vs.<br><br>TEAM INDUSTRIAL SERVICES, INC., EMERSON ELECTRIC COMPANY, AND EMERSON PROCESS MANAGEMENT POWER & WATER SOLUTIONS, INC.,<br><br>Defendants. | No. 18-2584-JWB-KGG |

## **MEMORANDUM AND ORDER**

This wrongful death action was voluntarily dismissed in October 2019. (Doc. 91.) Over a year later, Defendant Team Industrial Services (hereinafter "Team Industrial" or Defendant) moved to reopen the case for the limited purpose of reviewing the designation by nonparty Evergy Kansas Central Inc. (formerly "Westar") of various documents and depositions as confidential. (Doc. 93.)

Team Industrial argues the documents produced by Evergy, and the depositions of its employees, are potentially relevant to other actions, and that Evergy improperly designated all the discovery produced by it as confidential, in violation of the agreed Protective Order (Doc. 47) and relevant law. The Court

authorized a limited reopening of the action and directed the parties to meet and confer on whether the confidentiality designation might be withdrawn as to the relevant documents. (Doc. 98.) Team Industrial subsequently represented that the parties were unable to come to an agreement and moved for a ruling on the merits. (Doc. 99.) For the reasons provided herein, the Court hereby **DENIES** Defendant's motion.

## BACKGROUND

The Complaint filed in 2018 alleged that Damien Burchett was killed while working at the Jeffrey Energy Center in St. Mary's, Kansas, a coal-fired electric power plant, due to a defect in a safety relief valve in one of the plant's turbines. At the time of the accident, Burchett was employed by Westar Energy an Operations Manager at the plant. Burchett's son and daughter brought the present action against the makers of the valve (Emerson Electric Company, Emerson Process Management Power and Water Solutions, and Siemens Corporation) and the company which maintained and repaired the turbine (Team Industrial).

On July 17, 2019, the Court entered an Agreed Amended Protective Order to govern procedures for designating information produced in discovery as confidential. The Order expressly provides that the parties agreed to extend its

provisions to "third parties, including but not limited to, Westar Energy, Inc." (Doc. 47, at 9.)

So that Plaintiffs could join additional litigation in Texas arising out of the same incident, the Court on October 24, 2019, granted Plaintiffs' motion to dismiss the action, subject to the condition that "all discovery taken in this matter may be used by either party in later litigation, subject to the protective order." (Doc. 91, at 5.) At the time of its motion to reopen the present case for a limited purpose of challenging Westar's confidential designation of documents produced in the course of discovery, trial had yet to occur in the Texas litigation. Westar is not a party to the Texas action, but it was designated a potentially "responsible third party" under Texas law. Thus, a jury would be asked to assess a percentage of responsibility to Westar, even though no judgment can be entered against it.[1]

Defendant argued in its motion to reopen that Westar had designated almost all the materials it had produced as confidential and that this would substantially impair the course of discovery and trial in the Texas litigation. In addition, Defendant argues that the documents and depositions designated as confidential

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003 (West).

also might be relevant in separate litigation over its insurance coverage,[2] an ongoing administrative investigation,[3] and potential litigation between Team Industrial and Westar based on the indemnity provisions in their Service Contract.

The Court granted the motion for a limited reopening on April 29, 2021, overruling Westar's objection to the Court's jurisdiction, along with objections that Team Industrial was not seeking to "enforce" the Protective Order, that the motion was untimely, and that review of the documents would be unduly burdensome. (Doc. 98.)  The Court also gave the parties 30 days to meet and confer about a possible resolution of the matter.  (Doc. 98.)

Team Industrial's motion challenging the confidential designations was filed immediately before the 30-day deadline on May 28, 2021.  (Doc. 99.)  It simply filed a copy of a brief originally submitted as an attachment to its December 23, 2020, Motion to Reopen case.  (Doc. 93-3.)  While it is not uncommon to submit as an exhibit a motion or brief a party intends to file if given permission, the present motion supplied no additional information about recent developments in the case and did not respond to particular rulings in the Court's April 29 Order.

---

[2] *Team Industrial Services, Inc. v. Zurich American Insurance Company*, No: 2:19-cv-02710-HLT-KGG.

[3] Kansas Corporation Commission Docket No. 19-WSEE-441-GIE

Evergy submitted a lengthy Response (Doc. 100) requesting that the relief be denied, or at least deferred pending further discussions between the parties. Defendant's succinct Reply (Doc. 102) fails to controvert many of the facts presented in Evergy's Response. Those facts show that Evergy made substantial progress in unilaterally withdrawing the confidential designation of the majority of the documents in question, that it was operating in good faith, and that it had repeatedly expressed its willingness to continue to cooperate to resolve the issue. However, Team Industrial cut the such progress short by filing the present motion seeking the complete de-designation of all of Evergy's documents.

The materials submitted to the Court establish that in the interim, trial has concluded in the Texas matter, with the jury finding damages in the amount of $222 million. The jury assigned 90% of the fault for the accident to Team Industrial and 10% to Evergy. Evergy further states its understanding (Doc. 100, at 14) that the designated confidential documents and depositions were used freely during the course of the Texas trial, and Team Industrial has not challenged this understanding.

## **ANALYSIS**

The Court is not satisfied that Defendant Team Industrial complied with the directive to meet and confer as contained in the Court's Order of April 29, 2021,

authorizing the limited reopening of the case. Therein, the Court wrote: "The parties are instructed **to confer regarding the documents involved prior to engaging in motion practice** on this issue." (Doc. 98, at 8-9) (emphasis in original). Notwithstanding this concern, the Court will address Defendant's motion on its substantive merits.

Even if a good faith meet and confer had occurred, the present motion would not be granted. Team Industrial seeks relief that is overbroad, its motion misapplies the law and overlooks the context and content of the Amended Protective Order, and it fails to offer any sufficient grounds or public interest for departing from the broad language of the Protective Order.

Team Industrial's motion invokes the general right of the public to inspect and copy public records and documents, citing decisions such as *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597, 98 S. Ct. 1306, 1312, 55 L. Ed. 2d 570 (1978) and *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007). The authorities cited by Team (Doc. 99, at 4-5) discuss the very high standards for sealing from public view information which is actually used at trial. Accordingly, the motion by Team Industrial conflates those high standards for sealing a document with the distinct standards for the confidential designation of information produced in discovery. There is no general right of public access to materials which are produced during

6

the course of discovery.  See **Seattle Times Co. v. Rhinehart**, 467 U.S. 20, 31, 104 S.Ct. 2199, 2207 (1984) (holding that "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit.").

Defendant alternatively argues that the broad confidentiality designations made by Evergy are inconsistent with the Court's Guidelines for Agreed Protective Orders for the District of Kansas.[4]  Certainly those Guidelines discourage the use of blanket language providing that all documents produced by a party.

> Language such as 'this protective order shall apply to all documents the party designates as confidential' or 'this protective order shall apply to all business records' is too vague and overbroad.  The protective order must clearly reflect that its provisions only apply to the named categories of documents, information, items, or materials specifically set forth in the protective order.  The protective order must not cover information or documents that are available to the public or that have not been previously maintained in a confidential manner.

*See id*., § 2.[5]

---

[4] Available online at http://ksd.circ10.dcn/wp-content/uploads/2015/10/PO-Guidelines-Form-Rev.-March-2019.pdf

[5] Team Industrial also cites extensively from Section 3 of the Guidelines.  But Section 3 by its express terms deals with the filing of confidential documents under seal.  *See id.* ("The mere designation of information as confidential pursuant to the parties' protective order is insufficient to satisfy the court's requirements for filing it under seal in light of the public's qualified right of access to court dockets").  Thus, Section 3 has no direct relevance to the question of whether to remove the confidentiality designation of documents which were never filed with the Court.

However, Defendant omits by ellipsis the second sentence from the quoted passage, which obscures the fact that the Amended Protective Order was not a blanket application of confidentiality to all documents produced by Evergy, but to specified categories of documents, including:

> [t]rade secrets; business, commercial, or proprietary information that the producing party has not made publicly available; financial information and data; tax returns; technical information; product design drawings; proprietary engineering information and documentation; engineering information and testing; documents containing or constituting research and development, marketing, or training information; distribution or manufacturing processes; and any other proprietary or confidential business information of commercial value believed by the producing party to be subject to protection from disclosure under applicable statutes, laws, or regulations.

(Doc. 47, at 2-3.)

These are, of course, broad categories. The resulting broad designations employed by Evergy may be unsatisfactory now to Team Industrial. But the time to voice dissatisfaction was 2019. Team Industrial did not do so at the time. Rather, it explicitly agreed (along with the other parties) with non-party Evergy's request for a broad definition of confidentiality. This was the price for Evergy's rapid production of documents relevant to the wrongful death claim – and Team had no qualms in paying it.

Indeed, not only did Team Industrial expressly agree to the language in the Amended Protective Order, it repeatedly acknowledged the effect of that language. The deposition transcripts of two Evergy witnesses document the explicit agreement by counsel for Team Industrial that the depositions were confidential and subject to the Amended Protective Order.

Team Industrial argues that Evergy's designations go beyond even the broad categories identified in the Amended Protective Order, precluding it from potentially using this information in other litigation. In addition to ignoring the recent unilateral de-designation of the majority of documents by Evergy, this again conflates the designation of the documents as "confidential" during the course of discovery in this action with a sealing or a bar of the future use of the documents. The Amended Protective Order did not prohibit the use of material produced as confidential. It expressly provides that "[n]othing in this Order will be construed to affect the use of any document, material, or information at any trial or hearing." (Doc. 47, § 9.)[6]

---

[6] *See also* Section 7 of the Order ("Nothing in this Order will be construed as a prior directive to allow any document to be filed under seal. The parties understand that the requested documents may be filed under seal only with the permission of the court after proper motion.").

Further, the Order has its own mechanism for a party to challenge the wrongful designation of confidentiality. Under Section 8, the Order provided:

> [b]efore filing any motion or objection to a confidential designation, the objecting party must meet and confer in good faith to resolve the objection informally without judicial intervention. A party that elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge. The burden of proving the necessity of a confidentiality designation remains with the party asserting confidentiality.

Team Industrial never filed any timely objection to Evergy's designations prior to the dismissal of this action and there is no indication that it ever met and conferred with Evergy about its designations prior to the dismissal. Although the untimeliness of the present motion may not be sufficient by itself to warrant a denial, it is an appropriate factor to consider in weighing the merits of Defendant's motion.

Team Industrial also invokes both the need for public safety (Doc. 99, at 6-7) and the potential need for the documents in other cases (*id.*, at 8). As to public safety, it yet again confuses the issue by citing cases dealing with the public right

of access to *sealed* judicial documents.[7]  Nor has Defendant explained how *public* safety is affected by a single incident which, as Evergy represents in its response without contradiction by Defendant, occurred in a highly restricted, employees-only area of a coal-fired power plant.

The remaining potential uses identified by Team Industrial also carry limited weight.  As noted earlier, the challenged documents were freely used in the trial of the Texas litigation.  Similarly, Team has suggested that the documents might be used either in the *Zurich* action or in the potential litigation between Team and Evergy based on the indemnity provisions in their Service Contract.

But the *Zurich* case centers on Team Industrial's allegation that it participated in and was covered by Westar's Owner Controlled Insurance Program ("OCIP").  As such, the litigation centers on the contractual relations between Team and Westar well before the June 3, 2018, steam release accident which was the focus of the present action.  There is no substantial reason to think the documents produced in this action are relevant to the issues in *Zurich*, or even if so, why relevant discovery could not be more appropriately managed in that case.  The indemnity claim by Team is even less compelling – not only would the

---

[7] *See* **Booth v. Davis**, No. CV 10-4010-KHV, 2016 WL 1170949, at *2 (D. Kan. Mar. 23, 2016) (addressing motions to seal confidential settlement documents).

documents produced in this wrongful death action be largely irrelevant to a contract claim between Team and Evergy, the putative action at this point is entirely hypothetical.

This leaves the K.C.C. administrative action (Doc. No. 19-WSEE-441-GIE) noted earlier. But the K.C.C. is independently authorized to investigate such an incident pursuant to K.S.A. § 66-101h. That statute provides:

> The commission shall have general supervision of all electric public utilities doing business in this state and shall inquire into any neglect or violations of the laws of this state by any electric public utility or by the officers, agents or employees thereof. From time to time, the commission shall carefully examine and inspect the condition of each electric public utility, its equipment, the manner of its conduct and its management with reference to the public safety and convenience.

*Id*. Under K.S.A. 66-101g, "all incidental powers necessary to carry into effect the provisions of this act [the Electric Public Utilities Act, K.S.A. § 66-101, *et seq*.] are expressly granted to and conferred upon the commission." The K.C.C. is also authorized to establish its own procedures for protecting confidential information obtained during the course of an investigation. *See* K.S.A. § 66-1220a and K.A.R. § 82-l-221a. The Kansas Supreme Court has held K.S.A. § 66–101 and K.S.A. § 66–101g reflect a broad constitutional delegation of legislative

authority with respect to the regulation of public utilities. *See **Kansas Gas & Electric Co. v. Kansas Corp. Comm'n***, 239 Kan. 483, 495, 720 P.2d 1063 (1986).

The K.C.C. duly commenced such an investigation into the Jeffrey plant steam release accident on April 30, 2019, and entered its own Protective Order governing materials produced during the course of the administrative proceeding. *See* No. 19-WSEE-441-GIE, Protective Order and Discovery Order, May 2, 2019.[8] Defendant has made no showing that the K.C.C. is unable to obtain and manage the discovery in its own administrative action.

Finally, Defendant's motion seeks only one solution: the immediate de-designation of all documents produced by Evergy. It asks for this draconian result on the grounds that a more limited result (such as requiring Evergy to re-review the remaining documents) is beyond the Court's power. (Doc. 99, at 32.) But the cited authority for this proposition, ***United Nuclear Corp. v. Cranford Ins***., 905 F.2d 1424, 1428 (10th Cir. 1990), does not support such a conclusion. The court there observed that a court cannot impose new discovery requirements after the dismissal of an action. *See id.*, at 1428 (citing ***Public Citizen v. Liggett Group***, 858 F.2d 775 (1st Cir. 1988). At the same time, the court observed, "[a]s long as a

---

[8] http://estar.kcc.ks.gov/estar/ViewFile.aspx?Id=9296f193-4a52-4bf1-a63f-9fcd3f4cac2a.

protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed." *Id*. at 1427.

The management of challenges to Evergy's designations would occur pursuant to Section 8 of the Agreed Amended Pretrial Order. It would not be a "new" requirement imposed on Evergy. Moreover, Defendant's argument that the Court lacks the jurisdiction to impose a more reasonable remedy sounds disingenuous given that (1) this Court previously determined when it reopened the case that it has ancillary jurisdiction to consider the issue and review Evergy's designations (Doc. 98, at 5-6), and (2) Evergy's response (Doc. 100) makes no jurisdictional objection. Rather, Evergy agrees (if the Court does not simply deny the motion) to conduct additional de-designations, whether on its own or under court direction.

## Conclusion

In sum, the Court finds Defendant's motion should be denied on the merits. The very broad designations of confidentiality made by Evergy reflect good faith compliance with the very broad definitions for such material within the Amended Protective Order, definitions which were expressly agreed to by Team Industrial. Evergy has unilaterally de-designated the majority of the materials, and has expressed a willingness to do more. The central dispute as to the cause of the

wrongful deaths has been resolved in Texas, and Defendant has failed to offer any specific need for the single, harsh remedy it now proposes.

**IT IS ACCORDINGLY ORDERED** that Defendant's Motion to Challenge (Doc. 99) is **DENIED**.

IT IS SO ORDERED.

Dated this 3rd day of August, 2021, at Wichita, Kansas.

                                             S/ KENNETH G. GALE
                                             KENNETH G. GALE
                                             United States Magistrate Judge